UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE BALSLEY, *et al.*, | ) | Case No.: 1:08 CV 491 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| LFP, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

The instant case concerns the publication by L.F.P., Inc., the parent company of Hustler Inc., and Hustler, Inc. (collectively, "Defendants") of a photograph of Catherine Balsley, also known as Catherine Bosley ("Bosley") in the February 2006 issue of Hustler Magazine. Both Bosley and her husband (collectively, "Plaintiffs") claim a copyright in the published photograph. Plaintiffs' Complaint asserts the following claims: (1) direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement, all pursuant to 17 U.S.C. § 101 *et seq.*; (2) violation of the Ohio common law right to privacy; (3) violation of the right of publicity, pursuant to Ohio Revised Code § 2741 *et seq.*; (4) violation of the Ohio Deceptive Trade Practices Act, pursuant to Ohio Revised Code § 4165 *et seq.*; and (5) *respondeat superior*. (Compl. ¶¶ 26-52, ECF No. 1.) The court, in its Order on Defendants' Motion to Dismiss, dismissed Counts 4 and 5 (ECF No. 17). Therefore, counts 1, 2, and 3 remain. Defendants now bring a Motion for Summary Judgment (ECF No. 33). Also pending in this case are: (1) Plaintiffs' Motion to Compel Discovery (ECF No. 54); (2) Plaintiffs' Motion to Permit Testimony in Open Court by Contemporaneous

Transmission from a Different Location During Trial (ECF No. 59); (3) Defendants' Motion to Bifurcate (ECF No. 63); (4) Defendants' Motion *in limine* (ECF No. 64); (5) Defendants' Second Motion *in limine* (ECF No. 65); (6) Plaintiffs' Motion *in limine* to Exclude Unauthenticated Articles and Internet Postings as Hearsay (ECF No. 66); and (7) Plaintiffs' Motion *in limine* to Exclude Any and All Unrelated and Irrelevant "Evidence" (ECF No. 67).

## I. FACTS

In March 2003, Bosley participated in a wet T-shirt contest in Key West, Florida. Bosley completely undressed while on stage, and audience members took photographs and made video recordings of her. Some of the photographs and videos were posted on the Internet, which resulted in Bosley resigning from her position as a television news anchor in Youngstown, Ohio. The photograph at issue in this case was taken by Mr. Gontran Durocher and posted by him on his website, www.lenshead.com. The photograph portrays a partially nude Bosley on stage during the wet T-shirt contest.

Plaintiffs secured the copyright to the photograph at issue, as well as other works, in May 2004. (Ohio Case Number 4:04-CV-0393.) Plaintiffs registered their copyright with the United States Copyright Office. (Compl. ¶ 20; Pls.' Mot. Supplement *Instanter*, Ex. A.) Defendants received the photograph as a result of a contest, where they asked readers to submit photographs of attractive news women. The person submitting the winning photograph would win a Hustler prize pack. Someone sent a letter to Hustler submitting Ms. Bosley as his "Hot News Babe." (2005 Letter to Hustler, ECF No. 48-6.) He did not attach the photograph but instead stated that he "could send pics, but [Hustler] should have no trouble GOOGLEing them [itself]." (*Id.*)

Defendants published the photograph of Bosley in their "Bits and Pieces" section of the February 2006 issue as a part of their monthly "News Babes" feature. The commentary with the

-2-

photograph stated:

> This month's eye candy is Catherine Bosley from Cleveland's WOIO Channel 19. The anchorwoman not only looks good but apparently also likes to party. Previously, while at WXEN in Youngstown, Ohio she tendered her resignation after topless shots of the fetching blonde at a Florida wet T-shirt contest surfaced all over the Internet. Thanks to K.B. for an excellent submission." (ECF No. 48, Ex. 3.)

Subsequently, Plaintiffs brought this action.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

Summary judgment is "properly granted on the issue of fair use where ... there are no genuine dispute as to the four relevant factors" contained in 17 U.S.C. § 107 that would need to be tried. *Guccione v. Flynt and Hustler Magazine*, 1984 WL 18 (S.D.N.Y. June 5, 1984). Fair use is often a question of fact for the jury. *See DC Comics Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 28 (2d Cir. 1982); *MCA, Inc. v. Wilson*, 677 F.2d 180, 183 (2d Cir. 1981); *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1175 (5th Cir. 1980); *Eisenschiml v. Fawcett Publ'ns, Inc.*, 246 F.2d 598, 604 (7th Cir.), *cert. denied*, 355 U.S. 907 (1957); *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 606 F.Supp. 1526, 1531-32 (D.C.Cal. 1985).

### III. LAW AND ANALYSIS

### A. Copyright Infringement and Fair Use

Plaintiffs allege that Defendants infringed upon their copyrighted photograph of Plaintiff Bosley by publishing the photograph in the February 2006 issue of Hustler Magazine. (Compl., ¶¶ 26-30.) Defendants argue that the fair use exception permits their use of Bosley's photo. The doctrine of fair use is a "privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner." *Marcus v. Rowley*, 695 F.2d 1171, 1174 (9th Cir.1983) (quoting *Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir.1966), *cert. denied*, 385 U.S. 1009 (1967)). A determination of whether or not Defendants' use of the photograph constitutes fair use requires an evaluation of the following four factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 537 (6th Cir. 2004); 17 U.S.C. § 107 (1982). This list is not exhaustive. *Id*. The court also may take into consideration whether or not Defendants acted in good faith. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 529, 562-63 (1985); *Haberman v. Hustler Magazine, Inc.*, 626 F.Supp. 201, 211 (D.Mass.,1986).

<u>1. The Purpose and Character of the Photo's Use</u>

<u>a. Commercial vs. Informative</u>

The commercial use of copyrighted material supports a finding that it is not fair use. The Supreme Court has stated that unauthorized reproduction of a copyrighted work for a commercial

or profit-making purpose would be presumptively unfair. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984). The critical issue "is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562. In this regard, the use of a copyrighted photograph on the lead page of a newspaper was an attempt to increase revenue that "counsel[ed] against a finding of fair use." *Nunez v. Caribbean Intern. News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000). However, a court has also found that the use of copyrighted artwork in a previous issue of Hustler was "both to entertain its readers with [plaintiff]'s works and to comment on them." *Haberman*, 626 F.Supp. at 210. In that case, the court found that the "facts tend[ed] to neutralize each other in the fair use analysis." *Id.* Despite the fact that Hustler is published for profit, "the manner of use" in that case did not factor strongly against a finding of fair use. *Id.* In another case, Hustler's reproduction of a copyrighted poster of Farah Fawcett was found to be fair use despite its commercial nature. *Pro Arts, Inc. v. Hustler Magazine, Inc.*, 1986 WL 16647 (6th Cir., Mar. 25, 1986).

This case is factually similar to *Calkins v. Playboy Enters. Intern., Inc.*, 561 F.Supp.2d 1136 (E.D.Cal. 2008). In that case, Playboy published a high school graduation photograph, a handwritten autobiography, and other photographs of a Playmate. The court found that although the copyrighted photograph was used for a commercial purpose, "the use of the Photograph was incidental and less exploitative in nature than more traditional types of commercial use insofar as [Playboy Magazine] was neither using the Photograph to directly promote sales of Playboy, nor trying to profit by selling the Photograph." *Id.* at 1141. Important to the court's decision was that the photograph "was not advertised on the cover, nor made evident to prospective purchasers of Playboy," it was one of hundreds of photos in that issue, and no evidence suggested that Playboy

profited from using the photograph. Thus, despite the fact that Playboy published its magazine for profit, the court found that the commercial use of the photograph did "not weigh strongly against a fair use determination. Similar to the *Calkins* and *Haberman* cases, the facts of this case "tend to neutralize each other in the fair use analysis." *Haberman*, 626 F.Supp. at 210.

### b. Transformative Nature of Photograph

A finding that a defendant is engaged in commercial activity does not prevent a finding of fair use. *Hustler Magazine*, 606 F.Supp. at 1534-35; *MCA, Inc.*, 677 F.2d at 182; *Triangle Publ'ns*, 626 F.2d at 1175; *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003) ("Although not controlling, the fact that the work is used for a commercial or profit-making purpose as opposed to a non-profit purpose, weighs against a finding of fair use."). However, "the court must also consider whether 'the alleged infringers copied the material to use it for the same intrinsic purpose for which the copyright owner intended it to be used.'" *Hustler Magazine*, 606 F.Supp. at 1535 (quoting *Marcus*, 695 F.2d at 1175) (citing *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir.), *cert. denied*, 459 U.S. 879 (1982)); *Italian Book Corp. v. American Broad. Cos.*, 458 F.Supp. 65, 70 (S.D.N.Y.1978) (Finding that fair use is generally found if defendant's use is not in competition with the copyrighted use)).

Therefore, a major consideration is whether the purpose for which the photo was taken is different from the purpose for which it was used by Defendants. Defendants' use "is more likely to be considered fair if it serves a different function than plaintiff's." *Hustler Magazine*, 606 F.Supp. at 1535. The question is "whether the new work merely 'supersede[s] the objects' of the original creation ... or instead adds something new." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (quoting *Folsom v. Marsh*, 9 F.Cas. 342, 348 (C.C.D.Mass. 1841)); *Perfect 10, Inc., v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007); *Nunez*, 235 F.3d at 21-22. As the court

explained in *Nunez*, "[t]he more 'transformative' the new work, the less the significance of factors that weigh against fair use, such as use of a commercial nature." *Id.* at 22. Even a new work, such as a charcoal drawing a person made of three celebrities from a photograph of the celebrities, was deemed to be a non-transformative use. *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 409 (2001).

In *Nunez*, the newspaper, *El Vocero*, used a photograph of Miss Puerto Rico in which she was mostly nude. The photograph was from her modeling portfolio. The court determined that,

> [p]laintiffs' photographs were originally intended to appear in modeling portfolios, not in the newspaper; the former use, not the latter, motivated the creation of the work. Thus, by using the photographs in conjunction with editorial commentary, El Vocero did not merely "supersede[ ] the objects of the original creation[s]," but instead used the works for "a further purpose," giving them a new "meaning, or message." *Campbell*, 510 U.S. at 579 ... It is this transformation of the works into news-and not the mere newsworthiness of the works themselves-that weighs in favor of fair use under the first factor of § 107.

*Nunez*, 235 F.3d at 23. The new use in *Nunez* is more transformative than the present case. In this case, Mr. Durocher took the photograph to put up on his website for the public to view. Defendants used the photograph in part to entertain subscribers and in part as a short commentary on what happened to Plaintiff as a result of her entering the wet T-shirt contest. Unlike the "several articles about the controversy" in *El Vocero* that accompanied the model's photograph in *Nunez*, the commentary in Hustler magazine was only sixty words long. *Id.*, at 21.

Another case relied on by Defendants, *Calkins*, is also factually distinguishable. As discussed previously, Playboy published a photograph taken by photographer Calkins of Shannon, a Playboy Playmate, when Shannon was in high school in its magazine along with Shannon's handwritten autobiography and other photos of her. Calkins retained a copyright over Shannon's high school

-8-

photograph and sued Playboy for copyright infringement. The court found that the new use of Shannon's photograph was transformative. The court classified the original use of the photograph as a gift for Shannon to give to family and friends, and the new use as being "for the purpose of personalizing Shannon by providing insight into her life." *Calkins*, 561 F.Supp.2d at 1141. No such clear transformation occurred in the present case. The original use of the photograph of Plaintiff was to display public nudity on a website. The new use by Defendants was for the purposes of displaying the photograph along with some commentary. There is a substantial question, as indicated above, regarding whether the later use is transformative.

Plaintiffs argue that Hustler's use of Bosley's photograph did not transform its original purpose. Plaintiffs categorize the original purpose as "displaying nudity to titillate and interest others," and Defendants' use as "nothing different" than Mr. Durocher's original use because Defendants "utilized the photograph to display nudity and titillate their readership in the hopes of selling magazines." (ECF No. 48, at p. 13.) Plaintiffs point to the deposition of Mr. David, who was Editorial Director at Hustler in further support of their argument. In his deposition, he indicated that he needed to know what Ms. Bosley looked like before he would run the article. (David Tr., ECF No. 42, pp. 86-87.) Defendants disagree with Plaintiffs' argued purposes of the photograph. Defendants state that Mr. Durocher put the photograph on www.lenshead.com to create a collage of public nudity to be viewed for free. (Memo. in Supp. of Defs.' Mot. for Summ. Judg., ECF No. 34, at p. 11.) Defendants' purpose, they argue, is to "inform its readers about Plaintiff, her participation in the wet T-shirt contest, and the fact that she lost her job as a TV anchorwoman because of her public nude performance. LFP also expressed opinions in its commentary relating to Bosley's attractiveness-referring to her as, among other things, 'eye candy.'" (*Id*.) Thus, Defendants argue that their use of the photograph was transformative. The court determines that Defendants cannot

prove that Hustler's use of Plaintiffs' photograph was transformative.  Although the photograph was accompanied by original text, the text was very short and did not necessarily transform the photograph into a news piece.  Moreover, it is possible that a reasonable jury could find the use similar to Mr. Durocher's use on his website.  Thus, this transformative use factor falls in Plaintiffs' favor and against a finding of fair use.

## 2. Nature of the Photo

If a copyrighted work is more informational, then the defense of fair use is more likely to be applicable, but if the copyrighted work is creative, then the fair use defense is less likely to apply. *Hustler Magazine*, 606 F.Supp. at 1536; *Marcus*, 695 F.2d at 1176; *Sony Corp.*, 464 U.S. at 497. Defendants argue that the photograph is informational and cite to Mr. Durocher who stated that the level of creativity that went into the photograph was "[n]il" or "none."  (Durocher Tr., ECF No. 43, at p. 39.)  As the court in *Nunez* explained, "photography is an art form that requires a significant amount of skill; however, the photographs were not artistic representations designed primarily to express [the photographer]'s ideas, emotions, or feelings, but instead a publicity attempt to highlight Giraud's abilities as a potential model." *Nunez*, 235 F.3d at 23.  As a result, the court determined that the photographs could be categorized as either creative or factual, so "the impact of their creativity on the fair use finding is neutral." *Id*.  Like the court in *Nunez*, the court finds that the photograph here could be categorized as creative or factual.  Thus, the impact of this factor on a fair use analysis is neutral.

When considering the nature of the photograph, it is also relevant that the reproduction of Plaintiff Bosley's photograph does not infringe her right of first publication.  Just like Giraud's photograph in *Nunez*, Bosley's photograph was already shown on television news programs and the internet before Defendants published it in Hustler magazine. *Nunez*, 235 F.3d at 23.  Notably, "[t]he

-10-

scope of fair use is broadest with respect to publicly released works." *Haberman*, 626 F.Supp. at 212 (citing *Harper & Row*, 471 U.S. at 564).

### 3. Portion of the Photo Used

The more of a copyrighted work a defendant reproduces, the less likely it can rely on a fair use defense. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 175 (2d. Cir. 2001). However, "reproduction of a copyrighted work in its entirety ... is not dispositive." *Hustler*, 606 F.Supp. at 1537. In the case of a short work, like Hustler's 300-word parody about Reverend Falwell, "the substantiality of the copying should not be given great weight in determining fair use." *Id.* at 1538, fn 4. Use of an entire photo in *Calkins* did not weigh either for or against determination that such reproduction was a fair use because "a lesser portion of the [p]hotograph would have defeated ... [the] purpose for using it." *Calkins*, 561 F.Supp.2d at 1143. The reasoning of the *Calkins* court is applicable in this case.

Plaintiffs argue that Defendants could have used a non-copyrighted "head shot" of Bosley. They maintain that this case is unlike *Nunez* where the photograph was necessary to accompany a "current" news story; in this case, Defendants published the photograph three years after it was taken. Defendants argue that publishing less than the entire photograph or using another photograph would not adequately tell Bosley's story. (ECF No. 34, at p. 13.) The court finds that Defendants' argument is well-taken. The court does not find that the possible newsworthiness of the photograph is pertinent to the analysis of whether the entire photograph should be used. Thus, as in *Calkins*, the court finds that the full use of Plaintiffs' photograph is neutral relative to the doctrine of fair use.

### 4. Effect of the Use

The court must also evaluate the impact Defendants' actions had on the "potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The relevant inquiry "is whether the infringement impacted the market for the copyrighted work itself." *Lexmark Intern*, 387 F.3d at 544

(citing *Sony Corp.*, 464 U.S. at 450).  Courts have considered whether it "would adversely affect the potential market for the copyrighted work" if the challenged use were to "become widespread." *Haberman*, 626 F.Supp. at 213 (citing *Harper & Row*, 471 U.S. at 568) (quoting *Sony Corp.*, 464 U.S. at 451).  The *Nunez* court stated that the inquiry is limited to: "(i) 'the extent of market harm caused by the particular actions of the alleged infringer'; and (ii) 'whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market.'" *Nunez*, 235 F.3d at 24 (citing *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir.1998)).  Another way of framing the analysis is whether the new use: "(1) tends to diminish or prejudice the potential sale of the work, or (2) tends to interfere with the marketability of the work, or (3) fulfills the demand for the original work." *Calkins*, 561 F.Supp.2d at 1143; *Hustler*, 796 F.2d at 1155-56.  It is also possible that reproduction can enhance the value of copyrighted work.  *Haberman*, 626 F.Supp. at 214 ("The court believes that even superficial commentary on the fully reproduced works in most journals would enhance rather than diminish their value.").  Neither party claims that to be the case here.

The level of transformativeness of Defendants' use of the photograph should also be considered in determining the market or value of the copyrighted work.  The more transformative the work, the less likely the new work will affect the market for the original work.  *Elvis Presley Enterprises*, 349 F.3d at 631; *Calkins*, 561 F.Supp.2d at 1143.  As the U.S. Supreme Court held in *Campbell*, 510 U.S. at 591:

> [W]hen a commercial use amounts to mere duplication of the entirety of an original, it clearly 'supersede[s] the objects,' *Folsom v. Marsh* [9 F. Cas. at 348], of the original and serves as a market replacement for it, making it likely that cognizable [actionable] market harm to the original will occur. But when, on the contrary, the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred.

The court has already determined that Defendants' use of the photograph is not clearly transformative. The only arguable transformative aspect is that Defendants accompanied the photograph with a sixty-word commentary.

Use of a copyright that "has no demonstrable effect upon the potential market for, or the value of, the copyrighted work" should not be prohibited. *Sony Corp.*, 464 U.S. at 450-51. Hustler lost its case against the Moral Majority in part because Hustler "simply failed to offer a logical explanation of the connection between Falwell's use of the ad parody and any concrete injury to [Hustler's] copyrighted work." *Hustler Magazine*, 606 F.Supp. at 1539.

Defendants' expert stated that Hustler's publication of the photograph did not diminish its value. (Defs.' Memo. in Supp. of Def.s' Mot. for Summ. Judg., ECF No. 34, at p. 14.) Plaintiffs maintain that this case is different than the typical copyright case, however, because Plaintiffs want to prevent further dissemination of the photograph. In other words, it is of value to Plaintiffs to keep it private. It is reasonable to take into consideration that Plaintiffs are attempting to prevent dissemination of the photograph. The court finds that Plaintiffs have presented some evidence to support a finding that the non-dissemination of this photograph has value for Plaintiffs.

Even if the court were to engage in a strict market analysis regarding the value of the photograph, Defendants would still not prevail on their Motion for Summary Judgment. Plaintiffs further argue that the photograph does have market value, as evidenced by the demand Mr. Durocher experienced. Defendants maintain that, "Mr. Durocher testified that he has received recent inquiries seeking to purchase the photos." (Memo. in Supp. of Def.s' Mot. for Summ. Judg., ECF No. 34, at p. 14.) Defendants use this argument in an attempt to show that Defendants' "use of the photograph has not diminished its value." (*Id.*) (emphasis in the original). However, the fact that recent inquiries exist could also cut against Defendants. It shows that there is some market for the photograph, and

it remains possible that Defendants' use of the photograph diminished this market value. A reasonable jury could therefore find that Defendants' use negatively impacted the "potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).

### 5. Additional Consideration of Good Faith

Good faith is a factor that weighs in favor of permitting a defendant to employ the fair use defense. *Harper & Row*, 471 U.S. at 562-63; *Haberman*, 626 F.Supp. at 211. Defendants maintain that they have at all times acted in good faith.

Plaintiffs argue that Defendants acted in bad faith and consequently cannot rely on a fair use defense. As evidence of bad faith, Plaintiffs state that Defendants knew the photograph was copyrighted; they knew Plaintiffs had initiated lawsuits to prevent dissemination; they did not take reasonable steps to determine who owned the copyright before publication; and they did not show the photograph of Plaintiff or the accompanying commentary to counsel when seeking legal advice on whether Defendants could publish it. (ECF No. 48, at p. 18.)

Defendants maintain that Mr. David, Editorial Director at Hustler, did not know whether the photograph was subject to copyright protection and that an attorney, Mr. Feigenbaum, advised Mr. David that the fair use doctrine made it lawful to publish the photograph. (ECF No. 34, at p. 12.) In addition, Defendants state that the photograph was freely available on the internet and that there was no copyright mark on the photo they used; the photograph itself was a story that could not be told without publishing the photo; the photograph was one of many things within the issue of Hustler Magazine; Hustler did not profit from the photograph; and the photograph was made public years before Hustler published it. (ECF No. 34, at p. 12.)

Plaintiffs raise a genuine issue of material fact as to whether or not Defendants acted in good faith. Plaintiffs established that Defendants knew the photograph was copyrighted and failed to

investigate who owned the copyright or get permission to use the photograph. This case is different than *Nunez* in this regard. *Nunez*, 235 F.3d at 23 ("[A]ppellee asserts that it believed in good faith that the photographs were available for general, unrestricted circulation and redistribution, and appellant offers little evidence to rebut this assertion."). Unlike the circumstances in *Haberman*, 626 F.Supp. at 211, in which Hustler acted in good faith when publishing copies of Haberman's postcards because "Hustler credited Haberman with the copyright of the reproduced works and informed readers of how they could buy them from him," Defendants did not credit Plaintiffs as owners of the copyright. *Id*. Acknowledgment does not excuse infringement, but "the failure to acknowledge counts against the infringer." *Nunez*, 235 F.3d at 23. Thus, there is some probative evidence that would support a finding that Defendants did not act in good faith.

The court concludes that Defendants have not met their burden of showing that there is no genuine issue of fact about their compliance with the fair use exception. In particular, there are issues of fact as to whether or not Defendants' use is transformative, and what the effect of Defendants' use was on the copyrighted photograph. There is also a question regarding whether Defendants acted in good faith. Other factors, such as the level of creativity of the photograph, the nature of the photograph, and the portion of the photograph used, came out neutral. Even if some of the later factors may be viewed as falling in Defendants' favor, the court does not find Defendants are entitled to the fair use defense as a matter of law. It remains up to a jury to weigh the facts and determine whether or not this defense is available to Defendants.

### B. Common Law Invasion of Privacy

Plaintiffs claim that Defendants violated Ms. Bosley's right to privacy by misappropriating her likeness. In Ohio, a plaintiff must "show that plaintiff's name or likeness has some intrinsic value, which was taken by defendant for its own benefit, commercial or otherwise" in order "[t]o

prevail in a cause of action for the misappropriation tort." *Seifer v. PHE, Inc.*, 196 F. Supp. 2d 622, 630 (S.D. Ohio 2002). Not all uses of a person's name or likeness violates the right to privacy. Instead, "[i]t is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded." *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St.2d 224 at fn. 4, rev'd on other grounds, 433 U.S. 562 (1977)).

Two types of uses do not constitute misappropriations of a person's likeness. One is incidental use, and the other is a public interest use. *Vinci v. American Can Co.*, 591 N.E.2d 793, 794 (Ohio App. 8 Dist. 1990); *Bosley v. WildwetT.com*, 310 F.Supp.2d 914 (N.D. Ohio 2004). In *Zacchini*, 47 Ohio St.2d at fn. 4, the Supreme Court of Ohio adopted the then-proposed Restatement of the Law 2d, Torts, Section 652C (Draft No. 13), which states:

> *Incidental use of name or likeness*. The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity.

*See also*, *Vinci*, 591 N.E.2d at 794.

### 1. Incidental Use

As recognized in *Vinci*, 591 N.E.2d at 794, incidental use of a person's name or likeness is not actionable under the right of privacy. Publishing a likeness of a person does not constitute appropriation if the use of the likeness is "for purposes other than taking advantage of his [or her] reputation, prestige, or other value associated with him [or her] for purposes of publicity." *Id*. As the court in *Vinci* explained, "[i]t is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with his name or the likeness

-16-

that the right to privacy is invaded." *Id*. The fact that Defendants are in the business of publication does not automatically make the use of Bosley's likeness commercial in nature. *Id*.; *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996) ("[C]ommercial speech is best understood as speech that merely advertises a product or service for business purposes."). Defendants argue that it is significant that the photograph of Plaintiff was within the magazine and not on the cover and that the magazine was shrink-wrapped. Moreover, Defendants argue that the photograph was published as factual and historical information of Plaintiff's public activities, and Defendants did not use the photograph in a way that would suggest that Plaintiff endorsed or promoted Hustler Magazine.

Defendants argue that, in this regard, this case is similar to *Vinci*, 591 N.E.2d at 794. In that case, the companies that make Dixie Cups printed the name of and historical information about Charles Vinci, an Olympic weight-lifting gold medalist, and other athletes. The court found that the use of Vinci's and other athletes' names on a Dixie Cup was incidental to the promotion of Dixie Cups because the mention of the athletes' names was "within the context of accurate, historical information." *Id*. There was not an "implication that the athletes used, supported, or promoted the product." *Id*. (citing *Benally v. Hundred Arrows Press, Inc.*, 614 F.Supp. 969 (D.C.N.M.1985), rev'd on other grounds, 858 F.2d 618 (10th Cir., 1988)). Similarly, the use of the photograph of Bosley does not imply that she uses, supports, or promotes Hustler magazine. In fact, it is clear that the photograph is part of a contest. In addition, the commentary accompanying the photograph - albeit short - contains historical information about Plaintiff Bosley. Therefore, the court finds that this use was incidental and therefore Plaintiffs' appropriation of likeness claim fails as a matter of law.

-17-

**2. Public Interest Exception**

The test of permissible use is whether the photograph is illustrative of a matter of legitimate public interest; it does not matter whether the news provider is a "traditional news show" or not. *Bosley*, 310 F.Supp.2d at 923-24 (citing *Baugh v. CBS, Inc.*, 828 F.Supp. 745, 754 (N.D.Cal.1993)). The court is persuaded that Defendants' publication of Bosley's photograph was a matter of public interest. It is undisputed by the parties that Oprah sought to interview Bosley, Diane Sawyer did interview her on Good Morning America, Inside Edition ran a piece on her actions, and Bill O'Reilly covered her story twice on his show on Fox news. (Bosley Tr., ECF No. 41, pp. 21, 23-24, 76-78.) While the publication of the photograph alone may not be in the public interest, the commentary explaining this action makes it an issue of public interest. A portion of the commentary is as follows: "[p]reviously, while at WXEN in Youngstown, Ohio she tendered her resignation after topless shots of the fetching blonde at a Florida wet T-shirt contest surfaced all over the Internet." (ECF No. 48, Ex. 3.)

The court also finds it persuasive that the public interest exception found in the law of other states has been interpreted similarly. For example, in *Hilton v. Hallmark Cards*, 580 F.3d 874, 892 (9th Cir. 2009), the court found that California's public interest defense is "explicitly linked to the publication of newsworthy items" and that the privilege to publish "extends to almost all reporting of recent events even though it involves the publication of a purely private person's name or likeness." (quoting *Eastwood v. Superior Court*, 198 Cal.Rptr. 342, 349-50 (Cal. App. 1984)). In sum, the court finds that Defendants' use of the photograph of Plaintiff in this case is in the public interest because it reports information of public interest and therefore Defendants have proven that Plaintiffs cannot prevail on their privacy claim as a matter of law.

**3. Bars to Privacy Claims: Ohio Statutory Law, Fair Use and First Amendment Defenses**

Defendants argue that Plaintiffs' privacy claim fails because of the doctrine of fair use, Ohio Statutory law, and the First Amendment to the U.S. Constitution. Because the court granted Defendants' Motion for Summary Judgment on Plaintiff's privacy claim, it is not necessary to address Defendants' three proposed defenses.

### C. Statutory Right of Publicity

Defendants have also moved for summary judgment on Plaintiffs' statutory right of publicity claim. Ohio law prohibits the commercial use of another's name or likeness that draws from that person's reputation, prestige, or other value, for the purpose of publicity. *Bosley*, 310 F. Supp. 2d at 920-21 (citing *Zacchini*, 47 Ohio St.2d 224, ¶ 1, rev'd on other grounds, 433 U.S. 562 (1977)); Ohio Revised Code § 2741.02.[1] The Sixth Circuit defined the right of publicity as "the inherent right of every human being to control the commercial use of his or her identity" and that "[t]he right of publicity is a creature of state law." *ETW Corp.*, 332 F.3d at 928 (cited by *Id.*, at 920). The court finds that Defendants did not violate Plaintiffs' right to publicity because the use was incidental, the report was in the public interest, and the speech was not commercial, for the reasons discussed in the right of privacy section above. The court finds this argument is well-taken. *See Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) (feature in magazine using the name and photo of actor Dustin Hoffman was an entertainment story and not an infringing advertisement); *Bosley*,

---

[1]

> O.R.C. 2741.02 reads in pertinent part: "(A) Except as otherwise provided in this section, a person shall not use any aspect of an individual's persona for a commercial purpose during the individual's lifetime or for a period of sixty years after the date of the individual's death.
>
> (B) A person may use an individual's persona for a commercial purpose during the individual's lifetime if the person first obtains the written consent to use the individual's persona from a person specified in section 2741.05 of the Revised Code."

-19-

310 F. Supp. 2d at 914; See *infra*. Sections B(1)(2) and (3).

## IV. CONCLUSION

The court hereby denies in part and grants in part Defendants' Motion for Summary Judgment (ECF No. 33). Specifically, the court denies Defendants' Motion for Summary Judgment in regard to Plaintiffs' copyright claim because the court finds that there is a genuine issue of material fact as to whether Defendants can rely on the fair use defense. The court grants Defendants' Motion for Summary Judgment in regard to Plaintiffs' privacy claim and right of publicity claim.

Trial shall commence on Monday, February 8, 2010, at 9:00 a.m., as previously scheduled, on Plaintiffs' copyright claim.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

January 26, 2010