UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE BALSLEY, *et al.*, | ) | Case No.: 1:08 CV 491 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| LFP, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending in the above-captioned case is Defendant LFP, Inc.'s ("Defendant") Motion for Judgment as a Matter of Law and/or Motion for New Trial and/or to Alter or Amend the Judgment (ECF No. 153). Although two Defendants are listed on the Docket in this case, LFP, Inc. and Hustler, Inc., the parties agreed prior to trial that LFP, Inc. was the sole Defendant.

## I. FACTS AND PROCEDURAL HISTORY

The instant case concerns the publication by LFP, Inc., the parent company of Hustler, Inc., of a photograph of Catherine Balsley, also known as Catherine Bosley ("Bosley") in the February 2006 issue of Hustler Magazine. Both Bosley and her husband (collectively, "Plaintiffs") claim a copyright in the published photograph.

In March 2003, Bosley participated in a wet T-shirt contest in Key West, Florida. Bosley undressed while on stage, and members of the audience took photographs and made video recordings of her. Some of the photographs and videos were posted on the Internet, which resulted in Bosley resigning from her position as a television news anchor in Youngstown, Ohio. The

photograph at issue in this case was taken by Mr. Gontran Durocher and posted by him on his website, www.lenshead.com.  The photograph portrays a partially nude Bosley on stage during the wet T-shirt contest.

Plaintiffs secured the copyright to the photograph at issue, as well as other works, in May 2004. (Ohio Case Number 4:04-CV-0393.)  Plaintiffs registered their copyright with the United States Copyright Office. (Compl. ¶ 20.)  Defendant received the photograph as a result of a contest, where it asked readers to submit photographs of attractive news women.  The person submitting the winning photograph would win a Hustler prize pack.  Someone sent a letter to Hustler submitting Ms. Bosley as his "Hot News Babe."  (2005 Letter to Hustler, ECF No. 48-6.)  He did not attach the photograph but instead stated that he "could send pics, but [Hustler] should have no trouble GOOGLEing them [itself]." (*Id.*)

Defendant published the photograph of Bosley in their "Bits and Pieces" section of the February 2006 issue as a part of their monthly "News Babes" feature.  The commentary with the photograph stated:

> This month's eye candy is Catherine Bosley from Cleveland's WOIO Channel 19.  The anchorwoman not only looks good but apparently also likes to party.  Previously, while at WXEN in Youngstown, Ohio she tendered her resignation after topless shots of the fetching blonde at a Florida wet T-shirt contest surfaced all over the Internet.  Thanks to K.B. for an excellent submission.  (ECF No. 48, Ex. 3.)

Subsequently, Plaintiffs brought this action, alleging: (1) direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement, all pursuant to 17 U.S.C. § 101 *et seq*.; (2) violation of the Ohio common law right to privacy; (3) violation of the right of publicity, pursuant to Ohio Revised Code § 2741 *et seq*.; (4) violation of the Ohio Deceptive Trade Practices Act, pursuant to Ohio Revised Code § 4165, *et seq*.; and (5) *respondeat superior*.  (Compl.,

ECF No. 1.) In an Order on December 2, 2008, the court dismissed the claims for violation of the Ohio Deceptive Trade Practices Act and for *respondeat superior*. (ECF No. 17.) The parties stipulated to dismissal of Plaintiffs' second and third causes of action for contributory and vicarious copyright liability on April 13, 2009, and the court approved the dismissal on April 22, 2009. (ECF Nos. 31, 32,) In an Order on January 26, 2010, the court granted summary judgment in favor of Defendant on Plaintiffs' privacy and right of publicity claims. (ECF No. 70.) Therefore, Plaintiffs' direct copyright infringement claim remained.

A jury trial began on March 18, 2010. Before the end of trial, Defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 (ECF No. 137). The court deferred ruling on the Motion. The jury rendered a verdict on March 25, 2010, in favor of Plaintiffs in the amount of $135,000. The jury also found that the Defendant did not act willfully. (Verdict Form, ECF No. 143.) The court denied Defendant's Motion for Judgment as a Matter of Law (ECF No. 137) on March 30, 2010 (ECF No. 144). Defendant then filed the instant Motion for Judgment as a Matter of Law and/or Motion for New Trial and/or to Alter or Amend the Judgment on April 27, 2010 (ECF No. 153).

## II. LEGAL STANDARD

### A. Rule 50(b)

Federal Rule of Civil Procedure 50(b) states:

> **(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may

> include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> > **(1)** allow judgment on the verdict, if the jury returned a verdict;
> > **(2)** order a new trial; or
> > **(3)** direct the entry of judgment as a matter of law.

### B. Rule 59

Federal Rule of Civil Procedure 59 states, in relevant part:

> **(a) In General.**
> > **(1)** *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
> > > **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; ...

### III. LAW AND ANALYSIS

### A. Allegedly Prejudicial Statements Made During Trial

A verdict should be set aside if "there is a reasonable probability that the verdict of [the] jury has been influenced by" improper conduct. *Stickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998) (quoting *Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) (internal citation omitted)). The Sixth Circuit has further explained that, "a new trial is warranted when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996) (internal citation omitted). In addition, "failure to object at trial to closing arguments does raise the degree of prejudice which must be demonstrated in order to get a new trial on appeal." *Strickland*, 142 F.3d at 358.

Defendant objects to six statements made during trial: (1) Plaintiffs' counsel's statements

about the parties' comparative wealth; (2) Plaintiffs' counsel's statements about Mr. Flynt's non-appearance and Ms. Flynt's appearance; (3) Plaintiffs' counsel's reference to the role of deterrence when calculating damages; (4) Plaintiffs' counsel's reference to Plaintiff as a role model for his daughter; (5) Plaintiffs' counsel's statement that the parties stipulated to the existence of copyright infringement; and (6) Plaintiffs' counsel's statements about the credibility of Defense witnesses and counsel. In response, Plaintiffs do not cite any case law in support of their arguments that none of the comments Defendant objects to were prejudicial.

### 1. Modest Means

Defendant argues that it was prejudiced by Plaintiffs' counsel's comments about how Plaintiffs do not have much money and comments about how Defendant has a great deal of money. During closing arguments, Plaintiffs' counsel referred to Defendant as Dr. Feigenbaum's "$1.5 million client" and stated that Defendant "provides a tremendous amount of revenue" to Dr. Feigenbaum's law firm. (Trial Trans., ECF No. 153-1, at pp. 28, 40.) Dr. Feigenbaum, who testified at trial, was the attorney who advised Defendant on the issue of fair use prior to publication of Bosley's photograph, and a partner of the counsel who represented Defendant at trial. He billed Defendant large sums of money each year to advise Defendant on various matters related to publication. During closing, Plaintiffs' counsel stated: "[m]aybe whether Mr. Feigenbaum made a mistake is important to their law firm because of the size of the client . . . . Larry Flynt's company is a tremendously huge, successful company. They sell Hustler Magazine and countless other magazines and products. Revenue from just the magazine is $1 million." (*Id.*, at pp. 62-63.) Plaintiff's counsel also stated in regard to another witness, Ms. Howdeshell, who was called as an expert on damages, that she was "an expert who over the course of three cases, has earned almost

$100,000 assisting LFP in litigation. " (*Id*., at p. 64.) Plaintiff's counsel also stated that LFP's lawyers were on a retainer of "a million, five." (*Id*.) Plaintiffs' counsel also contrasted Defendant's and Plaintiffs' wealth, stating that Plaintiffs were "[p]eople of modest means" and categorized Defendant as a company that publishes copyrighted photographs because it "can." (*Id*.)

Plaintiffs point out that Defendant did not object to these statements when they were made.[1] However, the fact that counsel did not make a contemporaneous objection does not prevent the court from ordering a new trial. *See Igo v. Coachmen Industries*, 938 F.2d 650, 654 (6th Cir. 1991) (The court determined, among other things, that the conduct of the plaintiffs' counsel was so outrageous that it warranted a new trial even though the defense counsel did not contemporaneously object to plaintiffs' counsel's conduct.).

Plaintiffs argue that it was proper to mention the amount of money Defendant's law firm makes from having Defendant as a client because it shows potential bias of Dr. Feigenbaum. (Pls.' Mot. in Opp., ECF No. 156, at pp. 5-6.) Plaintiffs further argue that the amount of money Defendant paid Ms. Houdeshell is relevant because it goes to the issue of her credibility and bias. (*Id*., at p. 6.) Finally, Plaintiffs argue that the reference to Plaintiffs' "modest means" was appropriate because Defendant's counsel argued in closing that the case was only about money. (*Id*.)

### (a) Comments about Mr. Feigenbaum and Ms. Howdeshell

Plaintiffs' counsel's comments about Mr. Feigenbaum and Ms. Howdeshell are well within

---

[1] Although Defendant did not object to every statement of Plaintiffs' counsel that it now takes issue with in its Motion, Defendant objected after Plaintiff's counsel made the following statement in closing: "Larry Flint's company is a tremendously huge, successful company. They sell Hustler Magazine and countless other magazines and products. Revenue from just the magazine is $1 million." (Trial Trans., at p. 63.)

the bounds of permissible comments by counsel, as they relate to the witnesses' credibility and bias. The fact that both witnesses earn money from Defendant is relevant to judge their credibility. The fact that Mr. Feigenbaum is a partner of Defendant's trial counsel and has been on retainer for Defendant is further relevant to his credibility. The fact that Ms. Howdeshell has testified several times before on behalf of Defendant is relevant to her credibility also. *See Popvich v. Sony Music Entertainment, Inc.*, No 1:02CV359, 2005 WL 1126756, at *6 (N.D. Ohio May 2, 2005) ("All experts have some bias, and a [fact finder] may take such bias into account when evaluating the credibility of a witness' testimony."); *Communities for Equity v. Michigan High School, Athletic Ass'n.*, No. 1:98-CV-479, 2007 WL 5830967, at *3 (W.D. Mich. May 2, 2007) ("As for Defendants' claim of bias, this may or may not be true. This, however, goes to the weight of the evidence and not its admissibility."). (*See also* Jury Instructions, at p. 15 (listing "[d]id the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?" as a question a juror must ask him or herself about the credibility of the witnesses.) Counsel can review facts brought up during trial. This is all that Plaintiffs' counsel did. Therefore, the comments about the financial relationship between Mr. Feigenbaum and Ms. Howdeshell speaks to whether or not they are biased in favor of Defendant.

### (b) Comments Comparing Wealth of Plaintiffs and Defendant

A more in-depth analysis is necessary to determine whether Plaintiffs' counsel's comments that Plaintiffs were of "modest means" and that "the money stand[s] [with] LFP" were prejudicial. Not all references to a party's wealth by counsel require a new trial. The court, in the case of *Eisenhauer v. Burger*, 431 F.2d 833, 838 (6th Cir. 1970), which Defendant cites, determined that it is improper for a counsel to make arguments related to the plaintiff's financial situation. However,

the court determined that counsel's comments in that case were not prejudicial and therefore did not require a new trial. Similarly, in *Strickland* 142 F.3d at 359, the Sixth Circuit determined that, "[a]lthough there was an 'us-against-the-powerful-corporation' flavor to Plaintiff's closing remarks, . . . we believe those remarks were not so prejudicial as to mandate a new trial, especially where no objection was raised at the first trial. " *Id*., at 359.

The cases Defendant relies on are distinguishable from the present case. Defendant argues that *Igo*, 938 F.2d 650, stands for the proposition that a new trial must be ordered if an attorney references a party's wealth during closing arguments. However, the statements made by counsel in *Igo* were far more egregious than Plaintiffs' counsel's references to Mr. Feigenbaum's compensation, Defendant's revenue, and Plaintiffs' economic position. In *Igo*, the Court ordered reversal of the verdict and remanded for a new trial because the plaintiffs' counsel made many "wild unsubstantiated attacks" against the defendant, including that "[d]efendant was only sorry that [p]laintiffs had survived the accident," the plaintiffs' counsel stated that the defendant had made them "fight for five years and 11 months" to get to court when in fact it was the plaintiffs who delayed two years before filing the suit, and because plaintiffs' counsel referred to defendant as a "billion-dollar corporation." *Id*., at 653-54, 659. The court in *Igo* also reversed the district court's denial of the defendant's motion for judgment notwithstanding the verdict on the issue of damages because "evidence of damages" were "clearly insufficient, as a matter of law." *Id*., at 659. Therefore, the facts in *Igo* were far more egregious than the statements made by Plaintiffs' counsel in the present case. In *Pingatore v. Montgomery Ward & Co.*, 419 F.2d 1138 (6th Cir. 1969), which Defendant also cites for the proposition that reference to a party's wealth during closing arguments requires a new trial, the court determined that plaintiff's counsel acted improperly during trial by

shouting curse words while slamming his hand on the counsel table, placing an empty chair in front of the jury and asking "where is the corporation today?", pointing an accusatory finger at defendant's attorney and that empty chair, and ripping large sheets of paper down from a blackboard, crumpling them, and throwing them behind a table while saying "lies." *Id*., at 1142. The court reversed and remanded the case for a new trial on the issue of the amount of damages, but not on the question of liability, as the court found that, "[t]here is substantial evidence to support the verdict of the jury on the question of liability." *Id*., at 1143-44. Again, the facts in *Pingatore* were far more egregious than the allegations in the present case.

The court finds that Plaintiffs' counsel's statements are more similar to those in *Eisenhauer, Strickland*, or *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 478-79 (6th Cir. 2007). In *Eisenhauer*, 431 F.2d at 837, a case involving a personal injury to the plaintiff's decedent brought against a corporate defendant, the plaintiff's counsel's opening statement included background about the plaintiff's economic situation, including that he lives in a "house trailer, with his wife." The court did not find this statement to be so prejudicial as to require a new trial. In *Strickland* 142 F.3d at 359, the plaintiff's counsel in closing argument asked the jury to base its award in part on the defendant's net worth or income.[2] The court determined that the defendant was not prejudiced by the statements in closing argument. In *Bridgeport*, 507 F.3d at 478-79, the plaintiffs' counsel emphasized that the defendants were from New York City and the plaintiff was from the same place

---

[2] The plaintiff's counsel stated: "You can tell a manufacturer, your product is unsafe, and your voice will be heard.... You come in here as the voice of the community.... Do you want to live in a world where Owens Corning makes the rules.... You have an opportunity ... to tell Owens Corning, to tell the world where you stand, whether you stand for safe products and decency." *Strickland*, 142 F.3d at 358.

-9-

as where the trial took place, Nashville, Tennessee.  The plaintiffs' counsel also referred to one of the defendants as a "multi-million dollar company."  *Id*., at 479.  The court did not find that the defendants in *Bridgeport* were prejudiced by these statements.  Therefore, the court determines that the comments Plaintiffs' counsel made about Defendant's wealth did not prejudice Defendant and therefore do not warrant a new trial or an amended verdict.

### 2.  Mr. Flynt's Non-Appearance and Ms. Flynt's Appearance

Defendant argues that it was improper for Plaintiffs' counsel to suggest that Ms. Flynt was present in order to have a woman appear to represent a pornographic magazine and that Mr. Flynt could have been Defendant's representative at trial.  Defendant further argues that: (1) it was improper for Plaintiffs' counsel to state that he thought that Mr. Flynt's non-appearance was important; (2) Plaintiffs' counsel "made himself an unsworn witness and injected material into the trial that was outside the record"; and (3) it was improper for Plaintiffs' counsel to "induce the jury to think that Ms. Flynt was 'a plant' and that Mr. Flynt had done something wrong by not attending in person."  (Def.'s Renewed Mot. for Judg. as a Matter of Law and/or Mot. for a New Trial and/or to Alter or Amend the Judgment, ECF No. 153, at pp. 5-6.)  The exact language of Plaintiffs' counsel's comments is:

> I think it's important that Mr. Flynt isn't here.  Mr. Manna suggested do you want him to travel with his wheelchair.  That man travels all over the country.  Celebrating my father's 70th birthday, I saw him in Michigan.  He travels.  He could have traveled.  He didn't travel for a reason, and I think it's important, ladies and gentlemen, who is their trial representative? Ms. Flynt.  She had nothing to do with this magazine at all.  She didn't get up and testify, but she is a woman, and doesn't it make it seem more reasonable if you've got a woman representing your pornographic magazine? That's why Mr. Flynt is not here, ladies and gentlemen.

(Trial Trans., at p. 61.)  Defendant did not object after Plaintiffs' counsel made this statement.

The Sixth Circuit has determined that "the personal opinion of counsel has no place at trial." *United States v. Bess*, 593 F.2d 749, 754 (6th Cir. 1979).  However, when an improper comment only takes up a "brief moment" in a closing argument, courts rarely find the improper comment to be reversible error.  *E.g., Ramsey v. Am. Air Filter Co., Inc.*, 772 F.2d 1302, 1311 (7th Cir. 1985).  In *Canada Dry Corp. v. Nehi Beverage Co., Inc. of Indianapolis*, 723 F.2d 512, 526-27 (7th Cir. 1983), the plaintiff's counsel stated in closing argument: "I'm convinced that both [the president of the company plaintiff and the company plaintiff itself] are the persons who have been hurt badly by conduct on the part of Canada Dry that is without justification under any circumstances."  The court determined that these personal remarks of counsel were improper but did not amount to reversible error.  The court reasoned:

> Under these particular circumstances, the length of the closing argument and the brevity of the improper remarks and the trial judge's reminder to the jury that statements of counsel are not evidence (Tr. 3435-36), we find that these remarks, while improper and erroneous, were harmless error, and that the trial court did not abuse its discretion in refusing to grant a new trial on this basis.

*Id*., at 527.

The fact that Plaintiffs' counsel improperly stated that it was likely that Mr. Flynt was able to travel was not relevant to the issue of fair use that the jury had to determine, but this statement took up very little of the closing argument.  Furthermore, the jury was instructed that arguments of counsel are not evidence.  Therefore, the court finds that judgment as a matter of law in favor of Defendants, a new trial, or an amended judgment are not warranted on this objection.

### 3.  Plaintiff's Counsel told the Jury to Consider a Deterrence Effect

Plaintiffs' counsel stated, during closing arguments that, "yes we're asking for money.

-11-

There's no question about it. But, the law permits us to do that because part of the statute Mr. Manna didn't tell you about is a deterrent effect. A deterrent to deter people from violating other's copyrights." (Trial Trans., at p. 65.) Defendant argues that:

> juries cannot be told directly or in effect that they may consider punishment or deterrence as an element of damage and include that sum of money in their verdict so as to punish the defendant or deter others from like conduct unless the pleadings, evidence and instructions warrant a separate submission of punitive damages under the law.

*Vanskike v. ACF Industries, Inc.*, 665 F.2d 188, 210 (8th Cir. 1981). Therefore, Defendant argues that the award of $135,000 was excessive and that a new trial or a remittitur is necessary. Plaintiffs argue that it was proper for their counsel to explain the deterrence purpose of the copyright statute because Defendant's counsel had explained other purposes of the statute during his closing arguments.

The court does not find that Plaintiffs' counsel's statements prejudiced Defendant. The Jury Instructions explained that Plaintiffs were entitled to the profits attributable to infringement assuming that the jury found infringement and that the Plaintiffs proved gross revenue by a preponderance of the evidence. (Jury Instructions, ECF No. 138, at p. 27.) Further, given that the jury found that Defendant did not act willfully, and the award was only for $135,000, in the face of testimony and argument by Plaintiffs that the case was worth much, much more, the court finds that it is not probable that the jury increased the monetary award in order to deter Defendant or other potential defendants in the future. (Verdict, ECF No. 143, at pp. 2-3.) *See e.g., Strickland*, 142 F.3d at 359 ("[T]he jury's total damage award of $1,767,462, consisting primarily of $1,500,000 for Hagan's pain and suffering, is not so large as to indicate that the jury intended to punish Defendant.")

### 4. Plaintiff's Counsel Referred to Plaintiff Bosley as a Role Model for His Daughter

Plaintiffs' counsel stated during closing arguments:

> I have a daughter, who's the most important thing in my life, and I tell her it's okay to make mistakes, nobody is perfect. Stand up for what you believe in and don't give up. That's what I tell her. Catherine Bosley, you made a mistake. You took your clothes off. Okay. You can't take that back. But, if my daughter turns out like Catherine Bosley, if she is able to live up to that role model of not giving up and sticking up for what she believes in, I will be one proud father.

(Trial Trans., at p. 65.)

Plaintiffs argue that their counsel's statements were appropriate because Defendant's counsel degraded Ms. Bosley's character and motives during his closing argument, so Plaintiffs' counsel merely rebutted this argument by referring to Ms. Bosley as a good role model for his young daughter. (Pls.' Opp. to Mot., ECF No. 157, at p. 8.)

While it is true that an attorney cannot inject his own personal opinions into a closing argument, *Polansky*, 852 F.2d at 628, the court finds that Plaintiff's counsel's statements did not prejudice Defendant. At best, the comment suggests that Balsley stood up for the principle that she believed in taking on her case even though it would again expose her story to the public. The court cautioned the jury not to be persuaded by sympathies in its jury instructions. (Jury Instructions, ECF No. 139, at p. 2 ("You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.").) Therefore, the court denies Defendant's Motion in this regard.

### 5. Plaintiff's counsel stated that Defendant Stipulated to the Existence of Copyright Infringement

-13-

During his opening statement, Plaintiffs' counsel stated that the parties had stipulated to the existence of copyright infringement. (Trial Trans., at pp. 37-39.) Defendant maintains that it did not stipulate to the existence of an infringement because a fair use of copyrighted material does not constitute an infringement. 17 U.S.C. § 107. Defendant argues that the prejudice was made worse when the court told Plaintiffs' counsel, "why don't you clarify because I think everybody is in agreement about the case." (Def.'s Renewed Mot. for Judg. as a Matter of Law and/or Mot. for a New Trial and/or to Alter or Amend the Judgment, ECF No. 153, at p. 15.) In response, Plaintiffs properly noted that, when Plaintiffs' counsel resumed his argument, he did clarify that the parties had stipulated to the elements of a copyright infringement claim but that Defendant was asserting a fair use defense. The jury was advised on many occasions that fair use, "constituted a complete bar to any infringing activity." (Pls.' Opp. to Mot., ECF No. 157, at p. 9.) Thus, there is no merit to this claim.

Furthermore, the court explained to the jury that fair use was a defense to Plaintiffs' copyright claim. The Jury Instructions stated: "Defendant denies infringing the copyright and contends that its use of the subject photograph was protected by the doctrine of fair use. There is no copyright infringement where a defendant makes fair use of a copyrighted work." (Jury Instructions, ECF No. 138, at p. 20.) The Jury Instructions further explained the four factors the jury must consider when determining whether Defendant proved the fair use defense by a preponderance of the evidence and stated that, "Defendant contends that it is not liable to Plaintiffs based upon the doctrine of fair use. The doctrine of 'fair use' is a privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent, not withstanding the monopoly granted to the owner." Therefore, the court finds that Plaintiffs' counsel's opening

-14-

statements about the existence of a copyright infringement were not prejudicial. The court hereby denies Defendant's Motion on this issue.

**6. Alleged Implications that Defense Witness and Defense Counsel were not Credible.**

Defendant argues that it was prejudiced when the court instructed Plaintiffs' counsel, during his opening statement, regarding what was permissible to say in describing the anticipated testimony of that he could say in regard to Mr. Feigenbaum, Defendant's witness and legal counsel. Defendant objected when Plaintiffs' attorney stated in opening: "[n]ow you're going to see the lawyer testify . . . I don't want you to lose sight of the fact – or sight of the concept of who this lawyer is. This is not some independent lawyer. This is a lawyer who –." At this point, Defendant objected and said, "it's argumentative, Judge. He's arguing." The court clarified, in response to the objection, that Plaintiffs' counsel could say: "Okay. Okay. I'll allow you very limited latitude. I agree, it's argument. You can say, 'I don't think you will find him believable because,' and then move on." After the court made the above clarification, Plaintiffs' counsel stated that "Bill Feigenbaum[] is law partners with Mr. Manna and Mr. Reina. He is a lawyer in this case defending Hustler. You need to think about that in judging his credibility and where his bias lies." (Trial Trans., at pp. 45-6.)

Defendant does not provide the court with any case law in support of its argument that Plaintiffs' counsel's statements about Mr. Feigenbaum and Defendant's attorneys were improper and prejudicial. Plaintiffs argue that they had "every right" to discuss the credibility of Defendant's witnesses during opening or closing statements. (Pls.' Opp. to Mot., ECF No. 157, at p. 9.) As discussed above, counsel can make note of facts in opening and closing arguments that are relevant to the determination of credibility. The court finds that the comment with regard to Mr. Feigenbaum is totally within bounds as a comment on his credibility, but in any event, the court finds that it was

not prejudicial.

The court finds that there is no reasonable probability that verdict would have been different had Plaintiffs' counsel not made the above statements. Therefore, the court denies Defendant's Motion in this regard.

### B. The Verdict is Not Against the Weight of the Evidence

### 1. Defendant's Motion in *Limine* No. 1

Defendant argues that the court erred by denying Defendant's Motion *in Limine* No. 1. In that Motion, Defendant requested that the court preclude Plaintiffs from introducing evidence at trial concerning compensatory damages the Plaintiffs allegedly sustained (ECF No. 64, at p. 1). The court, speaking on the record, granted in part and denied in part Defendant's Motion *in Limine*. Defendant argues that as a result of the court's decision to deny part of Defendant's Motion *in Limine* No. 1, the verdict is against the weight of the evidence and excessive.

### 2. Nexus between Hustler's Revenue and Bosley's Photograph

Defendant argues that Plaintiffs did not meet their initial burden to show that "there was a reasonable nexus or relationship between the profits LFP earned and Plaintiffs' photograph." (Def.'s Motion for Judgment as a Matter of Law and/or Motion for a New Trial and/or to Alter or Amend the Judgment, ECF No. 153, at p. 17.) As a result, Defendant argues, the court should have precluded the Plaintiffs from introducing evidence of damages. (*Id*.) Plaintiffs argue in response that Plaintiffs met their burden to prove gross revenue by a preponderance of the evidence by using Defendant's stipulated numbers. (Pls.' Opp. to Mot., ECF No. 157, at p. 10.) Plaintiffs used numbers that Defendant's CEO, Larry Flynt, provided in Interrogatory responses to show that Defendant earned a profit from the use of Ms. Bosley's photograph. (*Id*., at p. 11.)

The court finds that there was sufficient evidence on the record for a finding that Defendant earned direct profits from the use of Ms. Bosley's photograph. Therefore, Defendant's Motion is denied in this regard.

### C. The Verdict of Copyright Infringement is Not Against the Weight of the Evidence.

As a preliminary matter, the court has already determined in its prior ruling on Defendant's other Rule 50 Motion that:

> There was substantial evidence produced at trial from which a reasonable jury could conclude that Plaintiffs had established all of the elements of its claims by a preponderance of the evidence and that Defendant had not proven its defense of fair use by a preponderance of the evidence.

(Order, ECF No. 144, at p. 2.) Defendant has not offered any new evidence or arguments that persuade the court to overturn its previous decision. Therefore, to the extent that Defendant reiterates its previous arguments in the present Motion, the court finds that Defendant's arguments are not well-taken.

### IV. CONCLUSION

For the foregoing reasons, the court hereby denies Defendant's Motion for Judgment as a Matter of Law and/or Motion for New Trial and/or to Alter or Amend the Judgment (ECF No. 153).

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 31, 2011

-17-